UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MANSFIELD PLUMBING PRODUCTS, LLC | ) ) ) | Case No.: 1:05 CV 1687 |
| Plaintiff, | ) ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| TEAMSTERS, CHAUFFEURS & HELPERS LOCAL UNION NO. 40, | ) ) ) ) | |
| Defendants, | ) | <u>ORDER</u> |

On August 23, 2005, the parties agreed to voluntarily dismiss Plaintiff Mansfield Plumbing Products, LLC's ("Mansfield" or "Plaintiff") claims in this case, leaving the only remaining issues in the case those presented by Defendant Teamsters, Chauffeurs & Helpers Local Union No. 40's ("Defendant" or "Union") counterclaim. Now pending before the court is Defendant's Motion for Summary Judgment (ECF No. 10) as to its counterclaim. For the reasons stated below, the motion is granted in part and denied in part.

**I. FACTS AND PROCEDURAL HISTORY**

This case is related to an identically captioned case, 1:04-CV 1822, in which this court has already entered judgment. Both cases concern the plight of Larry Martin ("Martin"), an employee at Mansfield's manufacturing facility. In November, 2003, Mansfield suspended and then fired Martin, a Union member, for falsifying his time card. Pursuant to the Collective Bargaining

Agreement ("CBA") between the Union members and Plaintiff's employees, Martin grieved his termination. After Mansfield denied the grievance, the parties submitted the grievance to an impartial arbitrator, John S. Weisheit ("Weisheit"). Arbitrator Weisheit sustained Martin's grievance on July 14, 2004, overturned the termination, and granted the following relief:

> The Grievant is hereby reinstated with back pay within the limits set forth in Article 22 Sec. 13 of the Contract.
>
> Reinstatement of seniority and other Contract privileges are to be effective as the date the discharge was imposed.

(Weisheit Opin. and Award 14, ECF No. 10, Exh. 7.)

On July 30, 2004, two weeks after Weisheit ordered Martin reinstated, Mansfield terminated Martin a second time based on events which occurred in October and November 2003. (Markham Aff. ¶ 9, ECF No. 10, Exh. 2.) The termination was retroactive to the original, November, 2003 termination date. (*Id.*) Martin grieved the second termination, and another arbitrator, James R. Cox, reversed the termination and ordered Martin to be reinstated. (Cox Opin. and Award, ECF No. 10, Exh. 8.) In a March 22, 2005 decision, Cox concluded:

> There is no reinstatement remedy here since Grievant is to be reinstated in accordance with the Award of Arbitrator John Weisheit. There is no indication Grievant has lost any additional time, benefits or wages as a result of the discharge before me.

(*Id.* at 12.)

Meanwhile, during the pendency of the above grievance process, Mansfield had appealed Arbitrator Weisheit's opinion and award in the first termination to this court, Case No. 1:04-CV 1822 ("Mansfield I"). The Union filed a counterclaim, seeking back pay, prejudgment interest, punitive damages, and attorneys fees.

Prior to a substantive ruling in Mansfield I, Mansfield filed suit to vacate Arbitrator Cox's

-2-

decision in state court, and the Union removed it to federal court. The case was assigned to Judge Gaughan, but was ultimately reassigned to the undersigned's docket since it was related to Mansfield I. The Union filed a similar counterclaim.

On June 30, 2005, this court upheld Arbitrator Weisheit's award in Mansfield I and granted summary judgment for Defendant and against Plaintiff. However, the court did not specifically address or mention additional back pay or prejudgment interest. Rather, the focus of the court's Mansfield I Order was upholding the arbitration award.

Mansfield reinstated Martin on July 26, 2005.

Shortly after the court's Order in Mansfield I, Plaintiff in the instant case voluntarily dismissed his challenge to Arbitrator Cox's opinion and award, reinstated Martin, and provided him 120 days of back pay. However, the Union now seeks summary judgment on its counterclaim for full back pay, with interest, as well as attorneys' fees and punitive damages. The Union also contends that while Mansfield has reinstated Martin, it has done so in violation of Arbitrator Cox (and Weisheit's) award.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in

> evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material

fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. LAW AND ANALYSIS

#### A. Legal Standard

Defendant asserts the court's jurisdiction to rule on its counterclaim is predicated on the Labor Management Relations Act, 29 U.S.C. §§ 141-168. Specifically, the court has jurisdiction over suits for violations of employer-labor organization contracts pursuant to 29 U.S.C. § 185. However, this case came before the court when the parties asked the court to determine whether the arbitrator's decision violated the CBA contract. Courts play limited roles in reviewing an arbitrator's decision. *E.g., United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 36 (1987). Thus, a court's jurisdiction with respect to an arbitrator's award is not without limits: "in enforcement actions courts may not go beyond an award to decide questions that the arbitrator did not decide." *United Steelworkers v. New Idea Farm Equipment Corp.*, 917 F.2d 964, 968 (6th Cir. 1990) (citing *Cleveland Paper Handlers v. E.W. Scripps Co.,* 681 F.2d 457, 459-60 (6th Cir. 1982)).

#### B. Law and Analysis

There is no pending challenge to Arbitrator Cox's opinion and award; the parties voluntarily

stipulated to the dismissal of that challenge. Moreover, Plaintiff does not dispute that the arbitration decision should be enforced. Rather, the dispute is solely about what the arbitration decision means,[1] and how it should be enforced. This is an area in which the court's jurisdiction is extremely limited.

The court will thus carefully evaluate the following relief sought by Defendant, as outlined in the counterclaim:

> (1) order Defendant, Mansfield Plumbing Products, LLC, to immediately reinstate Mr. Martin to his former position of employment with Defendant, with full seniority;
>
> (2) order Defendant, Mansfield Plumbing Products, LLC, to pay Mr. Martin all back pay, back benefits, and other sums owing to him from November 6, 2003 to the date of his reinstatement, with interest from the date of termination until the date of reinstatement;
>
> (3) order Defendant, Mansfield Plumbing Products, LLC, to pay Larry Martin and Plaintiff, Teamsters, Chauffeurs & Helpers Local Union No. 40, punitive damages in an amount the Court deems just and proper for Defendant's willful and bad faith refusal to comply with the terms of the duly rendered arbitration award;
>
> (4) order Defendant, Mansfield Plumbing Products, LLC, to pay Plaintiff, Teamsters, Chauffeurs & Helpers Local Union No. 40, all costs of this suit, including court costs and reasonable attorneys fees, for Defendant's bad faith refusal to comply with the terms of the duly rendered arbitration award; and
>
> (5) grant other such relief as the Court deems just and proper.

(Def. Ans. and Ctrclaim 8, ECF No. 4.)

*1. Immediate Reinstatement with Full Seniority*

---

[1] Inasmuch as Arbitrator Cox's opinion issues no award, but orders reinstatement in accordance with Arbitrator Weisheit's decision, the court will evaluate the meaning of Arbitrator Weisheit's opinion.

-6-

There is no dispute that Mansfield has reinstated Martin. However, the Union asserts that Mansfield has denied Martin full seniority in three critical ways.

First, in an affidavit attached to its motion for summary judgment, Michael Markham, the Union's collective bargaining representative, asserts: "Martin has been denied a job position, to which he would otherwise be entitled due to the attendance points which the Company has unilaterally imposed thereby denying Martin his seniority rights." (Markham Aff. ¶ 22, ECF No. 10, Exh. 1.) According to Defendant, upon Martin's reinstatement, Mansfield refused to wipe Martin's attendance record clean and instead reinstated him with the exact same attendance record he had when he was terminated. Defendant contends that had Martin never been wrongfully terminated, his attendance problems in 2003 would no longer be a part of his record, since they would have been automatically forgiven with time.

Second, Martin asserts that he should no longer be subject to the terms of a Last Chance Agreement ("LCA") he signed with Mansfield in late 2003, since the agreement, on its own terms, expired two years after its signing. However, upon Martin's reinstatement, Mansfield held the LCA in full effect and argued that it would not expire until Martin had *actually worked* for two years after signing it. Martin contends that his reinstatement with full seniority means he should be treated as if he had worked for the time he was wrongfully terminated, and thus, the LCA should expire.

Third, Martin argues that he should have all the vacation time he would have accrued since November 2003 if he had not been wrongfully terminated. Mansfield takes the position that vacation time may only be accrued during the period when someone actually works.

A court does not have the authority to go beyond an arbitration award to offer relief. *See Case-Hoyt Corp. v. Graphic Communications Int'l Union*, 5 F. Supp.2d 154, 156 (W.D.N.Y. 1998)

(finding "I simply do not have *de novo* authority to resolve the merits of the disputes that have arisen between the Union and the Company regarding the arbitration award.") Under well established Sixth Circuit precedent, "an ambiguous award may not be enforced and should be remanded to the arbitrator for clarification." *New Idea Farm Equipment,* 917 F.2d at 968. In *New Idea Farm Equipment*, the court was called upon to enforce an arbitration award reinstating an employee and ordering that the employee "be made whole for straight time earnings and benefits that would have been payable thereafter." *Id.* at 969. The employer made payments based on a 40-hour work week and 8-hour shifts. However, the employee contended that he would have worked overtime hours at a higher wage during the relevant time period, had he not been terminated. *Id.* The Sixth Circuit reversed the district court, found the award ambiguous, and remanded the issue to the arbitrator:

> There is no indication that overtime was discussed in any presentation to the arbitrator, and so far as the record discloses, he did not consider overtime. The arbitrator can easily clarify this issue, and then the court will know precisely what we are being asked to confirm and enforce. As we stated in *Steelworkers v. Timken Roller Bearing Co.*, 324 F.2d at 740, a court is "not required to enforce an award that is not clear as to its meaning and effect."

*Id.*

In the current case, Arbitrator Weisheit ordered that "reinstatement of seniority and other Contract privileges are to be effective as the date the discharge was imposed." (Weisheit Opin. and Award 14, ECF No. 10, Exh. 7.) It is not clear from this statement whether Mansfield is required to treat Martin as if he had been working the whole time, give him accrued vacation, and let the LCA and problems in the attendance record lapse. The award says nothing about attendance records, vacation, or other agreements. Moreover, it refers to "Contract privileges," without any specificity as to these additional issues. Finally, there is no indication that these specific issues were discussed in any presentation to the arbitrator. Therefore, the court can do nothing more than order Mansfield

-8-

to comply with whatever is clearly mandated by the Arbitrator's award. Since it is unclear whether treating Martin as if he had been working the whole time for the above purposes is clearly mandated, the court has no choice but to remand the matter back to the arbitrator to decide. Summary judgment is granted to the extent the specific relief of reinstatement and full seniority is ordered, but denied on the other issues noted above.

*2. Full Back Pay From November, 2003, With Interest*

  *a. Back Pay*

The Union seeks back pay from the date of the termination in November, 2003 to the date Mansfield reinstated Martin on July 26, 2005. Mansfield contends that any back pay beyond the 120 days ordered by the arbitrators is beyond the court's authority.

Arbitrator Weisheit's award specifically awarded back pay "within the limits set forth in Article 22 Sec. 13 of the Contract." (Weisheit Opin. and Award 14, ECF No. 10, Exh. 7.) That section of the CBA sets forth a limit on back pay that may be awarded: "Back pay will not be awarded should an arbitration result in an order of reinstatement of a discharged employee in an amount in excess of one-hundred and twenty (120) work days with all back pay offset by any other compensation received by the employee." (CBA Art. 22, Sec. 13, ECF No. 10, Exh. 6.) There is no dispute that Mansfield paid 120 days of back pay to Martin. The dispute is whether the court has the authority to cover Martin's back pay for the additional time he was not at work due to the pending litigation and Mansfield's refusal to reinstate him in accordance with the arbitration decisions.

While the Union seeks back pay for Martin for a nineteen month period, the court notes that several intervening events in that nineteen month period may have affected Martin's right to back

pay. The court will thus break up and examine the Union's claims for back pay by different periods of time, rather than as one solid period.

### *i. November 14, 2003 - July 14, 2004*

Mansfield first terminated Martin on November 14, 2003. Arbitrator Weisheit reversed the termination on July 14, 2004, approximately seven months later. In the decision, Weisheit awarded 120 days of back pay, which was the maximum allowable for the arbitration period between November 2003 and July 2004. Martin had the entire period, from November 14, 2003, to July 14, 2004, before him in arbitration, and could not contractually award more than 120 days. The court fails to see how it can now go beyond the arbitrator's award and beyond the CBA to award additional back pay for this period. The parties explicitly contracted to limit back pay should a arbitration result in a reinstatement order. This is precisely what happened, and Arbitrator Weisheit recognized that Defendant is entitled to no additional back pay for the period when the arbitration decision was pending. Moreover, the court notes that even if back pay were available for this period, it would be outside the time period covered by this lawsuit. This lawsuit was originally filed to challenge Arbitrator Cox's decision reversing Martin's second termination on July 30, 2004. Thus, the court's authority is tied to Arbitrator Cox's award, which addressed the time period from July 30, 2004 forward. Accordingly, the court is without jurisdiction to award back pay prior to that time.

### *ii. July 14, 2004 - July 30, 2004*

After Arbitrator Weisheit's decision, Mansfield refused to reinstate Martin and issued a second termination decision sixteen days later, on July 30, 2004. This sixteen day time period is

also outside the time period covered by Arbitrator Cox's award, and thus the court is without jurisdiction to award back pay for this time period.

### *iii. July 30, 2004 - March 22, 2005*

Mansfield terminated Martin again on July 30, 2005. Martin challenged the termination, and it was ultimately overturned by Arbitrator Cox on March 22, 2005. However, Arbitrator Cox did not award any additional back pay to Martin, finding "[t]here is no indication Grievant has lost any additional time, benefits or wages as a result of the discharge before me." (Cox Opin. and Award 12, ECF No. 10, Exh. 8.) Cox could have awarded back pay for this period of time, but elected not to do so. The court may not go beyond the arbitrator's decision to award back pay that was not awarded for a period of time that was squarely before the arbitrator. *See New Idea Farm Equipment,* 917 F.2d at 968. From July 30, 2004 to March 22, 2005, it was Mansfield's second termination of Martin which prevented Martin from returning to work, not Mansfield's refusal to comply with a valid reinstatement order. Thus, even though Weisheit's reinstatement order remained "final and binding," the intervening second termination prevents this court from awarding any back pay. For the same reasons the court could not award additional back pay for the time during which arbitration was pending before Arbitrator Weisheit, the court is without authority to award back pay for the period arbitration was pending before Arbitrator Cox.

### *iv. March 22, 2005 - July 26, 2005*

After Arbitrator Cox's reinstatement order, Mansfield did not reinstate Martin for another four months, until July 26, 2005. Mansfield did not seek to stay the arbitrator's decision when it

-11-

refused to reinstate. Neither party has cited any CBA provision or other law providing for an automatic stay of an arbitrator's decision while an employer challenges that decision in federal court. While nothing in the CBA specifically addresses the period of time where the employer challenges an arbitration decision in federal court, the CBA does provide that an arbitrator's decision "shall be final and binding upon all parties to the dispute." (CBA Art. 22, Sec. 7, ECF No. 10, Exh. 6.) An award of back pay for the four months between the second arbitration decision and reinstatement does not go beyond the terms of the CBA, as Mansfield contends. To the contrary, back pay is consistent with and directly results from the CBA. Nothing in the CBA permits an employer to ignore an arbitrator's "final and binding" reinstatement order with no financial repercussions whatsoever. If an award is to be final and binding, the employer is required to reinstate the employee and pay him. If they fail to reinstate him, they remain obligated to pay him, unless the arbitration award is overturned by a court of law.

Courts in this circuit have adopted this position and awarded back pay for the periods between arbitrator-ordered reinstatement and final court rejection of challenges to reinstatement. *See, e.g., Yamaha Int'l Corp. v. United Furniture Workers of America*, 892 F.2d 80 (unpublished) (6th Cir. Dec. 21, 1989); *Int'l Bhd. of Firemen & Oilers v. Nestle Co.*, 462 F. Supp. 94, 99 (S.D. Ohio 1978) (rev'd on other grounds). In *Yamaha*, an arbitrator ordered an employee reinstated without back pay. 892 F.2d 80 at *1-*2. The district court upheld the arbitrator's decision and awarded back pay for the employee from the date of the arbitration decision to the date of the judgment. *Id.* The appellate court upheld the award of additional back pay, even though the arbitrator had not initially ordered it. In *Nestle*, the court similarly awarded back pay for the period of time between an arbitrator's decision and the final court decision:

> there must be an award of back pay for the period during which the Company has refused to comply with the award of the arbitrator. The grievant is entitled to that sum which he would have earned between January 16, 1978 and such date as the grievant is made an unconditional offer of reinstatement in accordance with the arbitrator's award . . .

462 F. Supp. at 99. Courts in other circuits have found such an award to be "self-evident" and "clearly mandated by the relevant case law," *Case Hoyt Corp. v. Graphic Communications Int'l Union*, 975 F.Supp.231, 232-33 (W.D.N.Y. 1997), and necessary "to give full remedial effect to the arbitrator's reinstatement award." *Cliftex Corp. v. Local 377, New England Regional Joint Bd.*, 625 F. Supp. 903, 908 (D. Mass 1986). Therefore, pursuant to the above case law, Martin is entitled to back pay dating from the March 22, 2005 arbitration decision reinstating him to his July 26, 2005 reinstatement. During this time, there were two valid and binding arbitration orders, both ordering Martin reinstated. Even though Mansfield was challenging both orders in this court, it was legally obligated to reinstate and pay Martin. It did not do so. To hold otherwise would be provide a great incentive for employers to challenge every arbitration decision virtually cost-free, since even if they lost, they would be saved from paying wages for the pendency of the appeal.

*b. Interest*

The Union also seeks prejudgment interest dating from November, 2003 to July, 2005. The court finds Martin is entitled to interest for the same period of time it is entitled to back pay. The arbitrator ordered 120 days of back pay, but did not specifically address interest and indicated it was awarding back pay to the extent the CBA permitted it. The question of whether the CBA permits or requires interest is a question of CBA interpretation, which is for the arbitrator in the first instance. Thus, the court will not award interest prior to the arbitrator's decision. However, for the same reasons discussed in the court's back pay analysis, the Union is entitled to interest on back pay

for the same period discussed above. During this periods, arbitrators had ordered reinstatement, and Mansfield refused to reinstate due to its challenges in federal court. Thus, Martin was not working solely because Mansfield did not comply with the arbitrators' decisions. The only way to adequately compensate Martin for this period is to award him the present value of the wages he would have earned had Mansfield complied with the arbitrators. *See Cumberland Times News Div. v. Teamsters*, 1998 U.S. App. LEXIS 412, *9 n.4 (4th Cir. January 13, 1998); *Oscar Mayer Foods Corp. v. Beef Boners and Sausage Makers Union*, 118 LRRM (BNA) 2561 (N.D. Ill. 1984).

*3. Punitive Damages*

The Union's counterclaim seeks punitive damages, but its briefing in support of its motion for summary judgment does not mention punitive damages, let alone discuss them. Moreover, the Union does not indicate any jurisdictional basis for the court to award punitive damages. The arbitrator did not mention punitive damages. This counterclaim was brought to enforce the arbitrator's award. While a court may award punitive damages in certain types of cases, for example, in tort cases, there is no tort claim in this case. Furthermore, the Union has not made the court aware of any case for enforcement of an arbitrator's award in which a court goes beyond the arbitrator's award to grant punitive damages. For these reasons, as well as because the Union has abandoned its argument for punitive damages, punitive damages are not available to the Union in this case.

*4. Court Costs and Attorneys' Fees*

The Union urges the court to award it reasonable attorneys' fees and court costs incurred in this case. The Sixth Circuit has held that "a prevailing party may not ordinarily recover attorney fees in the absence of a statute or enforceable contract providing for a fee award." *Monroe Auto*

-14-

*Equipment Co. v. United Auto. Workers*, 981 F.2d 261, 269-70 (6th Cir. 1992). In the specific context of an action to enforce an arbitration award, there is no such statute, and the court is unaware of any contract term providing for fees. Thus, fees are only available upon a showing of "bad faith in the instigation or conduct of litigation." *Id.* at 270; *Humility of Mary Health Partners v. Local 377 Chauffeurs, Teamsters, Warehousemen and Helpers of America*, 296 F. Supp. 2d 840, 851 (N.D. Ohio 2003). While the Union has cited cases from our sister circuits for the proposition that fees in arbitration suits should be awarded "more freely . . . than in other cases of groundless litigation," *Dreis & Krump v. Int'l Ass'n of Machinists*, 802 F.2d 247, 254-55 (7th Cir. 1986), such a position has not been adopted by this circuit.

Furthermore, in awarding fees in *Dreis & Krump*, the court noted that one reason for the award was that the company challenging the arbitration should have known its challenge was barred by the statute of limitations. *Id.* at 254. In the instant case, there was no behavior that was as clearly in bad faith. The Union has not made a showing that Mansfield acted in bad faith and without any basis in challenging the arbitrator's decision. While Mansfield did dismiss its claims, the court does not believe Mansfield filed this suit in bad faith. Accordingly, the court declines to award fees.

### IV. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (ECF No. 24) is granted in part and denied in part.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

December 28, 2005